NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-787

DAN BROCK & others,[1] trustees,[2]

vs.

PAUL R. PINET & another.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant condominium unit owners appeal from a Superior Court judge's order dated March 28, 2024 (March 28 order), which (1) denied their request to enlarge the time for complying with a prior procedural order and, (2) struck their notices of appeal from earlier orders and from a separate and final judgment entered against them on count one of the plaintiff condominium trustees' complaint.  Seeing no abuse of discretion, we affirm the March 28 order.

---

[1] Sally Harty, Martha Slaight, Chris Conway, Jim Feeney, and Pam Sibbald.

[2] Of the Westport Point Condominium Trust.

[3] Marita Hyman.

Background.  In 2018, the trustees filed a two-count complaint seeking to recover unpaid common expenses (count one) and to establish and enforce a lien for those expenses (count two).  The defendants, representing themselves, answered and filed counterclaims.  There followed several years of procedurally tangled litigation in which the defendants filed numerous notices of appeal.  In particular, in late 2020, separate and final judgment entered against the defendants on count one, and the defendants filed a timely notice of appeal.[4]

Three years later, in 2023, the defendants moved for an order compelling assembly of the record.  The trustees opposed, and sought to strike the defendants' notices of appeal, on the ground that the defendants had failed to comply with their obligations under Mass. R. A. P. 9 (d) (2), as appearing in 481 Mass. 1615 (2019), regarding transcripts.  The judge heard the motion and request to strike on January 30, 2024.

In an order dated February 21, 2024 (February 21 order), the judge concluded that striking the defendants' notices of appeal was too drastic a sanction for their rule 9 (d) (2) noncompliance, particularly where, "[g]iven the nature of the

_____

[4] On count two of the complaint, separate and final judgment ultimately entered in the defendants' favor.  Proceedings on the defendants' counterclaim were stayed pending the disposition of any appeal related to the trustees' claims.

2

proceedings being appealed from, no transcript is necessary," and "the only step the defendants have failed to take is that of producing a signed statement that they do not intend to order any portions of the transcript."  Accordingly, the judge allowed the defendants' motion to compel assembly of the record, but on the conditions that, within twenty-one days after February 21, the defendants file and serve (1) "a signed statement that they have not and do not intend to order a copy of any transcript of the proceedings," and (2) "a signed statement of all orders from which they are appealing in this case, including the dates of all such order(s)."

The twenty-one day deadline came and went on March 13, 2024, with no action by the defendants.  Nearly two weeks later, on March 25, 2024, the defendants filed a "request for emergency extension of time to submit some record of transcript requests and [n]otices of [a]ppeal that have already been docketed in this case."  The defendants asserted that one of them had been in a medical procedure on February 22, 2024, and had been required to organize the other's medical procedures set for March 22, 2024.  The defendants stated that they did "not need any further transcripts other than those already ordered and [had] no need to further burden the [court] with [notices of appeal] other than those on the docket ([s]ee [d]ocket)."  The

3

defendants nevertheless requested an extension to April 10, 2024, so that "all [n]otices and [t]ranscript requests are resubmitted as the [c]ourt has ordered."

The judge then issued the March 28 order at issue in this appeal. The order denied the request for extension of time, reconsidered the denial of the trustees' request to strike the notices of appeal, and ordered the notices struck. The judge reasoned that the defendants' refusal to comply with the two simple conditions of the February 21 order, together with their belated request for an enlargement of time to comply with it, demonstrated that "the defendants either cannot or will not comply with the rules of litigation, and that the protracted nature of this litigation has been due, in great part, to that inability or unwillingness to comply." This appeal followed.[5]

Discussion. Although the defendants' brief on appeal challenges the merits of numerous orders issued throughout the course of the litigation, the sole order before us is the March 28 order denying their request for an extension of time and

---

[5] The defendants also filed, on April 29, 2024, a motion for reconsideration directed to the March 28 order and arguably to the February 21 order. The judge denied that motion on May 3, 2024, and the defendants filed a notice of appeal from the denial on August 8, 2024. Because that notice was filed well after the thirty-day deadline established by Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019), no appeal of the May 3 order denying reconsideration is before us.

4

striking all of their prior notices of appeal.  We discuss in turn the two parts of that order.

1. <u>Extension of time</u>.  In general, "[d]ecisions on requests for extension of time are reviewed for an abuse of discretion." <u>Lawrence Sav. Bank</u> v. <u>Garabedian</u>, 49 Mass. App. Ct. 157, 161 (2000).  An abuse of discretion is a "clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  <u>L.L.</u> v. <u>Commonwealth</u>, 470 Mass. 169, 185 n.27 (2014).

Here, the judge denied the defendants' request for an extension on the grounds that (1) it was filed well after (rather than within) the deadline previously set for their compliance; (2) the tasks that were to have been completed by that deadline were "simple, requiring mere minutes to perform"; and (3) the defendants' noncompliance was part of a history of "inability or unwillingness to comply" with procedural rules, which had already resulted in "protracted" litigation.[6]  These were all legitimate factors to be considered when deciding whether to grant an extension that would further prolong the litigation.

---

[6] The judge also noted that the request had been improperly filed by facsimile transmission.

5

The judge could also consider that the two reasons the defendants offered for the extension request carried little weight. First, the defendants cited a medical procedure on February 22, 2024, and a series of medical procedures on March 22, 2024. But the judge's February 21 order had given the defendants three full weeks to comply, i.e., until March 13, 2024. A medical procedure on the first day of the twenty-one-day compliance period did not explain the failure to comply on the remaining twenty days, nor did medical procedures occurring after the compliance period expired explain that failure.[7]

Second, as the judge stated, the defendants were inexplicably asking for more time to perform "tasks that the February 21 [o]rder does not require them to perform, such as gathering the record of transcript requests that have been docketed in this case." The February 21 order had required them to file merely "a signed statement that they have not and do not intend to order a copy of any transcript of the proceedings." A one-sentence statement would have sufficed. Nothing required them to take the time (let alone extra time) to list any previous transcript requests.

---

[7] Moreover, the letter that the defendants attached to their extension request listed dates for medical appointments that did not correspond to the February 22 and March 22 dates listed in the request itself.

6

To be sure, the judge may have overlooked that on March 9, 2021 (three years earlier), the defendants had requested certain transcripts of non-evidentiary hearings, and that those transcripts had already been filed with the clerk on October 6, 2021. Such an oversight would have been understandable, given that the docket then consisted of thirty-one pages, spanning more than six years, and involving rulings by three judges other than the judge here, whose first involvement was not until January 2024. Although the trustees, in opposing the motion to compel assembly of the record, had mentioned the defendants' earlier transcript request, they did not add that the transcripts had already been filed; it appears, at least on the record before us, that the judge may have been unaware of that fact.

The reasonable response by the defendants to any such oversight would have been at least for them simply to include, in their signed statement about not ordering transcripts, a qualifying phrase such as, "other than those transcripts already ordered, which were filed with the clerk on October 6, 2021." Instead, the defendants' extension request included the incomplete and therefore confusing statements that they did "not need any further transcripts than those already ordered," and that they needed more time so that the "[t]ranscript requests

7

[could be] resubmitted."  This gave the judge no information about what transcripts the defendants had requested and how much longer the clerk and the parties might need to wait for those transcripts to be filed before an appeal could proceed.[8]

For these reasons, we see no abuse of discretion in the judge's denial of the defendants' extension request.

2. <u>Striking notices of appeal</u>.  "If any appellant in a civil case shall fail to comply with Rule 9(d) . . . the lower court may, on motion with notice by any appellee, dismiss the appeal, but only upon a finding of inexcusable neglect."  Mass. R. A. P. 10 (c), as appearing in 481 Mass. 1618 (2019).  Here, the defendants' noncompliance with rule 9 (d) (2) is undisputed. The trustees accordingly requested that the notices of appeal be struck (the equivalent of dismissing the appeals).  The judge initially denied that request as too drastic a remedy but gave the defendants an additional three weeks to cure their noncompliance; the defendants failed, without adequate excuse,

---

[8] The defendants' approach was further exemplified by the assertion in their April 2024 motion to reconsider that the February 21 order was "impossible" and "can not be met in any time frame."  We have not the slightest doubt that the timely filing of a signed statement including the qualifying phrase we have set forth above would have been treated as complying with the February 21 order.  When the judge denied the motion to reconsider, she noted that at the hearing on January 30, 2024, when the order to file the rule 9 (d) (2) statement was discussed, "[t]he defendant[s] did not mention that it would be impossible to comply, which of course it was not."

8

to comply within that time.  We treat the judge's March 28 order denying the defendants' extension request as an implicit finding of inexcusable neglect.  We review the judge's determination for abuse of discretion.  See Neuwirth v. Neuwirth, 85 Mass. App. Ct. 248, 257 (2014).  For essentially the same reasons as discussed above regarding the denial of the extension request, the judge did not abuse her discretion in striking the defendants' notices of appeal.[9]

3.  Attorney's fees.  The trustees request an award of their appellate attorney's fees, based both on article VI, section 4, of the Westport Condominium Trust, and on the assertedly frivolous nature of this appeal.  We consider those two grounds in turn.

The cited condominium bylaw provision states in pertinent part as follows:

> "In the event of a default by any Unit Owner in the payment of his or her share of the common charges, the Trustees may seek to recover such common charges, interest, and expenses [1] by an action to recover the same brought against such unit Owner, or [2] by foreclosure of the lien on such unit

---

[9] We are also authorized to exercise independent judgment regarding whether striking the notices of appeal was appropriate in these circumstances.  See Mailer v. Mailer, 387 Mass. 401, 407 (1982).  Taking into account the history of this litigation and the defendants' role in prolonging it, we conclude that striking the notices was appropriate.  "[U]nder the circumstances presented here, we see no reason not to hold [the defendants] to the same standards as litigants who are represented by counsel" (quotation and citation omitted).  Neuwirth, 85 Mass. App. Ct. at 257.

as provided in Section 6 of Chapter 183A of the General
Laws of Massachusetts or in any other manner permitted by
law.  <u>In any action brought by the Trustees to foreclose a
lien</u> on a Unit because of unpaid common charges, the Unit
Owner shall, to the extent permitted by law, be required to
pay the costs and expenses of such proceedings and
reasonable <u>attorneys' fees</u> . . . ."  (Emphases added.)

This provision identifies two specific methods for the trustees to recover unpaid common charges:  by an action against the unit owner, or by foreclosure of the lien on the unit.  But it is only in an action to foreclose a lien that the unit owner is required to pay attorney's fees.

We think it implicit in the bylaw provision that fees are due only if the trustees prevail on their claim to foreclose the lien.  Here, the trustees did not do so; although they initially obtained judgment on count two, which sought such foreclosure, that judgment was vacated and a new judgment entered for the defendants on that count.  The trustees prevailed only on count one, seeking to recover the unpaid common charges in an action directly against the defendants as unit owners.  Thus, the bylaw provision does not support an award of attorney's fees.

Nor do we think the defendants' appeal was frivolous. Although the defendants certainly misperceived the scope of the appeal, and although the arguments in their brief and reply brief that the judge abused her discretion in the March 28 order were unsuccessful, those arguments were not completely

10

meritless.  See U.S. Bank Trust, N.A. v. Johnson, 96 Mass. App. Ct. 291, 297 (2019) (frivolousness goes beyond "simply lacking merit" and denotes "futility, not a prayer of a chance" [citation omitted]).  We therefore deny the trustees' request for appellate attorney's fees.

Order dated March 28, 2024, affirmed.

By the Court (Sacks, Smyth & Wood, JJ.[10]),

Clerk

Entered:  November 4, 2025.

---

[10] The panelists are listed in order of seniority.

11